LAW OFFICES OF

# Murray Richman
2027 Williamsbridge Rd., Bronx, NY 10461
(718) 892-8588 • Fax (718) 518-0674

OF COUNSEL
Jeffrey P. Chartier, Esq.
Brian L. Pakett, Esq.
Brian A. Jacobs, Esq.
Miguelina M. Camilo, Esq.
Don K. Taylor - Paralegal

December 22, 2014

The Honorable Kiyo A. Matsumoto
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

          Re:    United States v. Jose Familia Reyes
                  13-CR-259 (KAM)

Your Honor:

      Please receive this letter in anticipation of sentencing.

      Jose Familia Reyes pled guilty on January 21, 2014 before the Honorable Magistrate Judge Pohorelsky to count one of the superseding indictment pursuant to a plea agreement entered on August 5, 2013.

      For the reasons set forth below we seek a sentence below the advisory guideline range. We ask the Court to note that the person before you is not the same person who was arrested over two years ago. Should the Court find that incarceration is indeed necessary we ask that it is the absolute minimum necessary to comport with the directives of 18 U.S.C. 3553 (a).

### *HISTORY OF THE CASE*

      Jose voluntarily surrendered on April 15, 2013 and was released on bond on June 28, 2013. He was initially indicted on May 9, 2013 along with another seven (7) individuals all whom have plead guilty, with the exception of the top named defendant who is deceased. Jose was subsequently indicted on the superseding indictment on November 26, 2013 that named six (6) new individuals. Upon information and belief, the government's investigation continues in efforts to ascertain other individuals involved with these charges and still unknown to date.

## Objections to the Pre-Sentence Report
### (herein after "PSR")

On November 25, 2014, we submitted our objections to: AUSA Jager and United States Probation Officer Sullivan to via letter. We re-submit these objections for The Court's review:

1. Although January 12, 2015 was previously scheduled by the Court for sentence, due to the Judge's calendar, the sentencing date has been adjourned to January 23, 2015 at 11:00 a.m.

2. As to paragraphs 14 and 15, defendant reiterates Probation's position and clarifies that he did not have specifics as to others involved in this scheme. Defendant was not aware of any other individuals or groups beyond those that accompanied him and directed him the day of December 22, 2012.[1]

3. As to paragraph 21, defendant was not arrested. He voluntarily surrendered on April 15, 2013 upon learning that there was a warrant for his arrest.

4. As to paragraph 62, defendant's girlfriend, Ms. Yvette Garcia, was born here in the United States and is a US citizen. Additionally, defendant's son's name is spelled Christan Familia.

5. Finally, defendant takes issue with the offense level calculation detailed in paragraphs 37 through 49. When defendant pled guilty to Count 1 of the indictment, he did so according to a plea agreement dated August 5, 2013. In said agreement, the offense level calculated a loss of more than $1,000,000.00 (§2B1.1(b)(1)(I)) resulting in an offense level of 16. Although defense counsel acknowledges that this calculation is not binding, the Department of Probation opined that to charge the instant offense with a loss of $2,782,597.00, an increase of 18 points in offense level, "does seem overly-punitive, particularly since the defendant did not benefit from the entire amount netted in this portion of the fraud."[2] As such, defense would argue that the loss calculation and offense level of 19 as found in the plea agreement would be more appropriate resulting in a range of imprisonment of 30 to 37 months.

Further, subsequent to probation completing their report, contact was made with defendant's girlfriend, Yvette Garcia, and sister, Madilyn Familia Reyes. Defendant's financial affidavit was also submitted.

---

[1] See Superseding Indictment, Count One, Overt Act (a).
[2] See paragraph 97 of Probation's report.

## History of Jose Familia Reyes

Jose was born in the Dominican Republic on June 12, 1988. Jose's parents divorced while he was still a young adult. Jose currently resides with his father while his mother remains in the Dominican Republic. Here in the United States Jose has two sisters, Marilady Familia Reyes, and Madilyn Familia Reyes. He also has two brothers, Jefferson Familia and Ashony Familia.

Jose and all of his siblings are employed full time and each provide for their children. Jose emigrated to this country on March 19, 2005. He was brought here by his father for a "better life." He stopped his studies, making it only to the 9th grade, and left his mother who was continuing her studies to become a school principal in the Dominican Republic. Jose was determined to work hard and become a stable provider for her and his grandparents.

Jose is now engaged to his girlfriend of ten (10) years, Yvette Garcia. Together, they have two children, Christan Familia, now 7 years old, and Chrisvette Familia, now 4 years old. Jose is the sole financial provider for their household and his fiancé cares for the children.

Upon meeting Jose, one thing that is evident is his ambition and strong work ethic. He has had a number of jobs ranging from the United Parcel Service (UPS) to Bed Bath & Beyond. At or about the time of this incident, Jose worked with a paper delivery service for PCF located in Elmsford, New York. There he worked late night into the early morning hours delivering newspapers. During the day he worked at K-Mart in White Plains, New York where his efforts elevated him from sales associate to manager. Per probation's report, David Archly, Jose's manager, referred to Jose as an asset who was able to master every department in the store. Mr. Archly even noted Jose's efforts to learn English. When Jose began working he barely spoke English. Although Jose juggled two jobs and his home life, he still made the effort to enroll in night classes to learn and master the language.

## Objection to Guidelines Calculation

Based on our objections to the PSR above, we subsequently object to the Guideline calculation Total Level of 23. It is the defense's position, based on our objections, that Total Level should be 19. We therefore believe Jose's guideline range should be 30 to 37 months.

We again want to point out that probation in their report found that an 18 level increase due to the loss amount claimed appeared to be "overly punitive, particularly since the defendant did not benefit from the entire amount netted in this portion of the fraud"[3] nor did or could he have contemplated the full significance of this criminal act.

---

[3] See Probation's Report dated November 13, 2014, at paragraph 97 and Counsel's letter under separate cover.

## *Acceptance of Responsibility*

Jose has fully accepted full responsibility for his actions in this matter.

## *Letters of Recommendation In Support of Jose*

It is vital to understand that Jose is a young man who is more than his indictment would imply. In an effort to demonstrate the true character of this individual, attached are seven (7) brief letters[4] attesting to Jose's good nature, dedication to hard work and kindness. We anticipate several more letters will be submitted on Mr. Jose's behalf, but we have yet to receive them as of the writing of this memorandum. We will file these additional letters upon receipt.

The first letter comes from his girlfriend, now fiancée, Yvette Garcia. Yvette and Jose are high school sweethearts and equal partners in managing their household and taking care of their children. For Yvette and her children, Jose is their entire world, their main provider and closest friend. Without Jose near, Yvette knows her family will fall apart. In her letter, she recalls the struggle it was to have Jose away from their home for two months when he was initially incarcerated. Jose, Yvette says, is a wonderful man being who puts others before himself. He diligently goes to his first job at 3:00 a.m., then his second job at 6:00 a.m., to be home by 6:00 p.m. and then is still willing to help with the house and the kids. Jose is Yvette's biggest motivator and because of him Yvette has pursued GED classes to get her high school diploma.

The second letter comes from Jose's stepmother, Iliana Palma. Jose, she says, is a hardworking man who is a well-known gentleman and a very responsible, religious individual.

The third letter comes from Victor Jimenez, Jose's co-worker at Kmart. Victor is Jose's son's godfather and his good friend. Victor has known Jose over 8 years and he sees him as a trustworthy individual and hard worker. Victor says "Jose is a person of good morals and values and always thinking about others before his own self, he is very giving."

The fourth letter comes from Anabelle Reyes, Jose's cousin. She sees Jose as a great person but "at one point he made a mistake and had friends who were a bad influence." Since the incident, Anabelle says Jose is more family oriented. He has changed and become more of a caring person, not only for himself but for his children.

---

[4] Our apologies to the Court. We are still waiting for the submissions from defendant and the submitters. In an effort to abide by our filing deadline we ask that the Court receive our Memorandum now without attachments and ask that the Court accept the letters once they are provided under separate cover.

The fifth letter from his current employer, Jay Archer, president of Green Jay Landscaping, Jose is referred to as a dependable and trustworthy man, who accepts challenges and knows how to deal with stressful situations.

The sixth letter is from David Ashley, manager at White Plains Kmart writes on behalf of Jose. Jose worked at that location from May 5, 2005 to April 5, 2013 where he worked as Lead in their seasonal department.

The seventh and last letter comes from Aliquis J. Germosen. Aliquis works as a Security Officer for Port Authority and is Jose's close friend. Aliquis has known Jose for more than 13 years and is now Jose's daughter's godfather. Jose and Aliquis went to the same primary school in the Dominican Republic and Jose's mother was actually Alliquis' social studies teacher at one point in time. For Aliquis, Jose is an amazing human being with a tremendous love for his family. Jose always thinks about them before himself and even through his ups and downs, Jose "always gets back on his feet and learn[s] from his circumstances." Aliquis writes that as humans we all make mistakes, "but in order to get back up we need a chance, an opportunity to show others, but most important to prove to ourselves what we are made of." Aliquis asks that Jose be given this chance to prove himself.

### *Sentence*

Before this Court imposes sentence it is required to consider the factors set forth in Title 18 U.S.C. § 3553(a). *Booker and Crosby*, supra. The relevant factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for. . .the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

When imposing sentence, under these factors, courts are instructed to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." *Id.*

Sentencing Mr. Familia Reyes to a term of incarceration below the mandatory guideline range is "sufficient . . . to comply with the purpose set forth in 18 U.S.C. §3553." As mentioned previously, this was an isolated incident for Mr. Familia Reyes and he had never been arrested before.

As stated by Justice Sotomayor recently in *Pepper v. U.S.* (131 S.Ct.1229): "This court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant- if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 246-247, 69 S. Ct. 1079 93 L. Ed 1337 (1949). Congress modified this principle at 18 U.S. C. § 3661m which provides that "no limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character and conduct," and at 3552(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant." §3553(a)(1).

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure" *Koon v. United States, 518 U,.S.. 81, 113, 116 S. Ct 2035, 135 L. Ed. 2d 393 (1996).* Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams, 337 U.S. at 247 69 S. Ct. 1079.*

"In particular, we have emphasized that "[h]ighly relevant-if not essential- to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams 337 U.S. at 246, 69 S Ct. 1079.* Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Wasman v. United States.* 468 U.S. 559, 564, 104 S Ct. 3217, 82 L. Ed. 2d 424 (1984).

"In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." *See 18 U.S.C. §3661.*"USSG § 1B1.4 (2010).

Jose is a testament to what is possible in this country with hard work and dedication. He came to this country in March 2005 and by May was holding down two jobs and doing everything within his power to provide a stable life for his family. As you have read through the letters of recommendation, Jose is an extremely hard worker. He has lived his entire life as a law-abiding citizen and has always made it a point to measure his actions and put the well being of his love ones before himself. **It is this wish to provide that led him astray and when in the hands of a bad group of friends and surroundings, he faltered, believing the possibility that what he worked for day and**

**night could be achieve in no time.**[5] We say this not to excuse this behavior. Jose has taken full responsibility for his actions but we ask this Court to consider these factors to make way for the second chance Jose deserves.

We recognize that the Court must impose sentence. However, given all of the factors that the Court will consider, including the fact that Jose has no prior contacts with the criminal justice system, his hard working and selfless nature, his dedication to his family, we submit that a downward departure from the applicable guideline range is the most appropriate sentence.

Most respectfully,

Murray Richman

cc: AUSA Hilary Jager

U.S.P.O. Patricia A. Sullivan

---

[5] Probation's Addendum to the Presentence Report disclosed their follow-up interview with Yvette Garcia wherein she speaks of the peer-pressure Jose felt from his friends and how this contributed to the instant offense.